**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**STATESVILLE DIVISION**
**CIVIL DOCKET NO.: 5:06-CV-00087**

| | | |
|---|---|---|
| **GREGORY WOOD PRODUCTS, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **MEMORANDUM AND ORDER** |
| | ) | |
| **ADVANCED SAWMILL MACHINERY** | ) | |
| **EQUIPMENT, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on Defendant's "Motion to Dismiss" and "Memorandum of Law in Support . . .," both filed November 20, 2006. On December 29, 2006, Plaintiff filed its Memorandum of Law in Opposition to Defendant's Motion to Dismiss, to which Defendant filed a Reply on January 10, 2007. Defendant's Motion is now ripe for disposition.

Having considered the written arguments and applicable authority, this Court will <u>grant</u> in part and <u>deny</u> in part Defendant's Motion to Dismiss.

## I. FACTUAL AND PROCEDURAL HISTORY

The facts, taken in the light most favorable to the Plaintiff, tend to show the following: Defendant Advanced Sawmill Machinery Equipment, Inc. ("ASM"), a manufacturer of lumber mill systems and lumber handling equipment, entered into an agreement with Plaintiff Gregory Wood Products, Inc. ("GWP") to sell and install log breakdown and lumber handling systems in a lumber mill operated by GWP in Catawba County, North Carolina. (Am. Compl. ¶3.) In the communications prior to the purchase of these systems, ASM represented to GWP on numerous

occasions, including a visit to a lumber mill in Arkansas, that the systems purchased by GWP would be able to produce 40,000 board feet per hour of softwoods and 30,000 board feet per hour of hardwoods. (Am. Compl. ¶¶ 4, 13-15.) GWP claims that at some point an oral contract was formed between the parties governing the sale and installation of the equipment by ASM. (Am. Compl. ¶6.) ASM denies this, and instead asserts that a written contract was created containing certain "Terms and Conditions of Sale." (Am. Countercl. ¶3.) Among these "Terms and Conditions" are a Florida choice of law provision and a disclaimer of all warranties other than the limited warranty described therein. It is not clear from the pleadings when either the oral contract or the written contract were allegedly formed.

In any event, ASM began to install its equipment in GWP's lumber mill. As part of the installation process, ASM sent invoices to GWP for each particular job and piece of machinery. According to ASM, the aggregate amount of these invoices exceeded two million dollars, with an unpaid balance at present of $279,204.89, excluding interest. (Am. Countercl. ¶4.) GWP claims to have paid more than six million dollars to ASM for the purchase and installation of the lumber mill systems. (Am. Compl. ¶18.) After the log handling and lumber mill systems were installed, they failed to yield the desired number of board feet per hour. (Am. Compl. ¶4.)

On or about May 24, 2006, GWP filed its initial complaint in the Superior Court of Catawba County, North Carolina. On July 20, 2006, ASM filed its notice of removal to this court. GWP filed an amended complaint on November 11, 2006, which asserts four claims against ASM: (1) breach of contract; (2) negligent misrepresentation; (3) negligent design, manufacture, and/or installation; and (4) breach of warranties.

## II.  DISCUSSION OF CLAIMS

ASM argues that it is entitled to the dismissal of all of GWP's claims.  ASM asserts that GWP's claims for breach of contract and breach of warranties are barred by the Statute of Frauds, or alternatively, by the "Terms and Conditions of Sale," which ASM alleges were part of a written contract between the parties.  ASM also contends that GWP's claims for negligent misrepresentation and negligent design, manufacture, and/or installation are barred by the economic loss doctrine.  In addition, ASM asserts that GWP's negligence claims are insufficiently pled.

### A.  Standard for a Motion to Dismiss

The purpose of a Rule 12(b)(6) motion is to test the adequacy of the complaint and not the facts that support it.  Neitzke v. Williams, 490 U.S. 319, 326-27, 109 S.Ct. 1827, 1832 (1989). Therefore, a court must take the factual allegations in the complaint as true and construe the complaint in the light most favorable to the plaintiff.  Randall v. United States, 30 F.3d 518, 522 (4th Cir. 1994).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  Revene v. Charles County Comm'rs, 882 F.2d 870, 872 (4th Cir. 1989).  Dismissal may occur only if it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim that would entitle the plaintiff to relief.  Flood v. New Hanover County, 125 F.3d 249, 251 (4th Cir. 1997).  "If 'relief could be granted under any set of facts that could be proved consistent with the allegations,' the motion must be denied."  Jackson v. Blue Dolphin Commc'ns of N.C., LLC, 226 F. Supp. 2d 785, 789 (W.D.N.C. 2002) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).

**B. Choice of Law for GWP's Breach of Contract and Warranty Claims**

As a preliminary matter, there is an unsettled choice of law issue which must be addressed before preceding to GWP's claims for breach of contract and breach of warranties. Since this is a diversity action, this court must apply the conflict of law rules of North Carolina, the state where this court is based. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 1021 (1941).

ASM's "Terms and Conditions" contain a Florida choice of law provision. In North Carolina, if contracting parties have agreed to a choice of law provision it will be enforced. Pioneer/Eclipse Corp. v. Kohler Co., Inc., 113 F. Supp. 2d 811, 817-18 (W.D.N.C. 2000) (citing Bueltel v. Lumber Mut. Ins. Co., 134 N.C. App. 626, 518 S.E.2d 205, 209 (1999)). However, at this stage of the proceedings–and without further discovery–this court is unable to determine if that provision is valid or legally enforceable. See Pioneer/Eclipse, 113 F. Supp. 2d at 817-18; Dassault Falcon Jet Corp. v. Oberflex, Inc., 909 F. Supp. 345, 351-52 (M.D.N.C. 1995); discussion, infra, 6-7, 11-12. Since either Florida or North Carolina law may be found to control after additional fact-finding,[1] this court will make no determination concerning the applicable law for these claims and will instead cite to the law of both states.[2]

---

[1]If the choice of law provision is invalid, then under North Carolina law governing contracts for the sale of goods, North Carolina law will apply if the transaction bears "an appropriate relation" to the state. N.C. Gen. Stat. § 25-1-301. Court decisions have interpreted this phrase to mean that the law of the state with the "most significant relationship" to the contract will be applied. Dassault, 909 F. Supp. at 352 (M.D.N.C. 1995) (citing Boudreau v. Baughman, 322 N.C. 331, 368 S.E.2d 849 (1988)); See also Pioneer/Eclipse Corp., 113 F. Supp. 2d at 817-18 (W.D.N.C. 2000).

[2]The parties have adopted the same approach and cite to both North Carolina and Florida law throughout their pleadings and supporting briefs.

**C. GWP's Breach of Contract Claim**

GWP alleges that ASM orally contracted with GWP to provide merchantable and fit equipment and machinery for use in GWP's business. (Am. Compl. ¶6.) To establish a claim for breach of contract, a plaintiff must show "(1) existence of a valid contract and (2) breach of the terms of [the] contract." Phelps-Dickson Builders, L.L.C. v. Amerimann Partners, 172 N.C. App. 427, 436, 617 S.E.2d 664, 670 (2005) (quoting Poor v. Hill, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000)). Here, GWP has alleged the existence of a contract. (Am. Compl. ¶6.) GWP has further alleged breach of the terms of the contract by ASM due to failure to provide fit and merchantable equipment. (Am. Compl. ¶7.) Thus, GWP has satisfied the requirements for pleading a breach of contract so long as GWP's allegations may be taken to support the validity of the alleged contract.

ASM contends that the Statute of Frauds bars GWP's claim for breach of contract because GWP has only alleged the existence of an oral contract. As a general rule, the Statute of Frauds bars the enforcement of a contract "unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought." N.C. Gen. Stat. § 25-2-201(1); Fla. Stat.§ 672.201(1). However, a contract that would otherwise be barred by the Statute of Frauds is enforceable if the party against whom enforcement is sought admits in its pleadings that there was a contract for sale. N.C. Gen. Stat. § 25-2-201(3); Fla. Stat. § 672.201(3). In addition, a valid and legally enforceable contract may arise in the absence of a written agreement through conduct of the parties which indicates the existence of a contract. N.C. Gen. Stat. § 25-2-204; Fla. Stat. § 672.204. A valid contract can also be formed through a written confirmation of an earlier oral agreement, even if this confirmation states different or additional terms than those agreed upon. N.C. Gen. Stat. § 25-2-207(1); Fla. Stat. § 672.207(1).

In <u>Premix-Marbletite Mfg. Corp. v. SKW Chems.</u>, the plaintiff, a manufacturer of pool coatings, purchased a chemical additive from the defendant. 145 F. Supp. 2d 1348, 1354-56 (S.D. Fla. 2001). After the plaintiff's order was filled, the parties exchanged invoices and payment was made. <u>Id.</u> at 1354. In that case, the court found that no contract was created by the parties' invoices because they disagreed on material terms. <u>Id.</u> at 1355. Despite this, the court held that a contract arose from the conduct of the parties in executing the sale. <u>Id.</u>

In a similar case from North Carolina, the court of appeals held that an oral agreement over the telephone for the purchase of urea resin created a binding contract at the time of the phone conversation. <u>Se. Adhesives Co. v. Funder Am., Inc.</u>, 89 N.C. App. 438, 441-44, 366 S.E.2d 505, 507-08 (1988). The court in that case held that the subsequent conduct of the parties as well as their prior course of dealings was conduct recognizing the existence of a contract under N.C. Gen. Stat. § 25-2-304(1). <u>Id.</u> at 442, 366 S.E.2d at 507. The court further held that a bill of lading, which disclaimed the warranties of merchantability and fitness and which was shipped alongside the urea resin, materially altered the terms of the original contract and was unenforceable since these terms had not been accepted by the purchaser. <u>Id.</u> at 442-43, 366 S.E.2d at 507-08.

In this case, ASM alleges the existence of a written contract between the parties but denies the terms alleged by GWP as part of an oral contract. After further discovery, GWP may, like the purchasers in both <u>Se. Adhesives</u> and <u>Premix,</u> be able to prove the existence of a legally enforceable contract arising from the conduct of the parties in purchasing and installing the lumber mill systems and separate from any written contract alleged by ASM. GWP may also be able to show that the "Terms and Conditions of Sale" admitted by ASM as part of a written contract were instead confirmation of an earlier, different oral agreement. Although ASM argues that the "Terms and

Conditions of Sale" bar GWP's contract claims in the case that a contract is found, both <u>Se.</u>
<u>Adhesives</u> and <u>Premix</u> make clear that not all of these terms are necessarily enforceable, especially
if they materially alter the agreement of the parties or disagree with either an earlier oral agreement
between the parties or any of GWP's own forms used in the transaction.

Without further fact-finding, this court is unable to determine if a contract enforceable on the
terms alleged by GWP arose from the transactions between the parties in this case. However,
because the pleadings allege facts which construed in the light most favorable to the plaintiff could
satisfy the Statute of Frauds, ASM's motion to dismiss on these grounds is denied and GWP's claim
for breach of contract may proceed.

## D. GWP's Breach of Warranties Claim

GWP claims that the log breakdown and lumber handling systems purchased from ASM were
neither of merchantable quality nor fit for their intended use and thus violated the implied warranties
of merchantability and fitness for a particular purpose. ASM asserts as an affirmative defense
against both warranty claims that they are barred by the "Terms and Conditions of Sale." Because
the elements for establishing breach of the implied warranties of merchantability and fitness for a
particular purpose are distinct, GWP's claims will be evaluated in turn by this court. This court will
then examine the affirmative defense asserted by ASM. Finally, the court will conclude the analysis
of this issue with a brief summary and the court's decision regarding ASM's motion to dismiss these
claims.

### 1. <u>Breach of the Implied Warranty of Merchantability</u>

Unless otherwise excluded, "[a] warranty of merchantability is implied in every sale of goods
if the seller is a merchant of the kind of goods sold." <u>McDonald Bros., Inc. v. Tinder Wholesale,</u>

LLC, 395 F. Supp. 2d 255, 264 (M.D.N.C. 2005); N.C. Gen. Stat. § 25-2-314; Fla. Stat. § 672.314.

To be merchantable goods must, among other things, "pass without objection in the trade under the

contract description" and be "fit for the ordinary purposes for which such goods are used." N.C.

Gen. Stat. § 25-2-314; Fla. Stat. § 672.314. In order to establish that the warranty of merchantability

has been breached, a buyer must show that:

> "(1) the goods bought and sold were subject to an implied warranty of merchantability; (2) the goods did not
> comply with the warranty in that the goods were defective at the time of sale; (3) the alleging party's injury was
> due to the defective nature of the goods; and (4) damages were suffered as a result."

McDonald, 395 F. Supp. 2d at 264 (quotations omitted) (citing Cockerham v. Ward, 44 N.C. App.

615, 624-25, 262 S.E.2d 651, 658 (1980)).

Here, taken in the light most favorable to the plaintiff, GWP has pled facts in support of all

the elements required to state a claim for breach of the implied warranty of merchantability. GWP

alleges that it purchased lumber systems from ASM, a merchant in goods of this kind.[3] (Am. Compl.

¶¶2, 3.) GWP alleges that the lumber mill system installed by ASM was defective. (Am. Compl.

¶26.) Finally, GWP alleges that these defects caused it injury and that GWP suffered damages in

the form of lost profits, increased labor expenses, and other incidental expenses as a result of this

injury. (Am. Compl. ¶ 28.) Thus, GWP has alleged all of the elements necessary to establish a claim

for breach of the implied warranty of merchantability.

---

[3]Although GWP never directly alleges that ASM is a merchant in goods of this kind, the
relationship of the parties and the allegations contained in the complaint and supporting briefs
imply that this is so. This court is allowed to draw inferences from the pleadings when ruling on
a Rule 12(b)(6) motion. Wolman v. Tose, 467 F.2d 29, 33 n. 5 (4th Cir.1972); Iconbazaar,
L.L.C. v. Am. Online, Inc., 308 F. Supp. 2d 630, (M.D.N.C. 2004). Regardless, ASM nowhere
disputes this characterization, and the allegation of breach of an implied warranty of
merchantability gives notice to ASM that this is a fact at issue.

2.  Breach of the Implied Warranty of Fitness for a Particular Purpose

GWP further alleges a breach of the implied warranty of fitness for a particular purpose.  A warranty of fitness for a particular purpose will be implied in a contract for the sale of goods if the seller "has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods."  McDonald, 395 F. Supp. 2d at 265 (quoting N.C. Gen. Stat. § 25-2-315); Fla. Stat. § 672.315.  Thus, to establish a breach of this warranty a buyer must show: (1) that the seller had reason to know of the particular purpose of the buyer; (2) that the seller had reason to know that the buyer was relying on the seller's skill or judgment to select the appropriate goods; and (3) that the buyer did in fact rely upon the seller's skill or judgment.  See McDonald, 395 F. Supp. 2d at 265 (citation omitted); See also N.C. Gen. Stat. § 25-2-315; Fla. Stat. § 672.315.

The significant distinction between the warranty of merchantability and the warranty of fitness for a particular purpose is that the warranty of fitness for a particular purpose "envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability."  N.C. Gen. Stat. § 25-2-315 cmt. 2; Fla. Stat. § 672.315 cmt. 2.  Thus, to state a claim for breach of the implied warranty of fitness for a particular purpose, a plaintiff must allege the particular purpose for which the goods were bought as opposed to any 'ordinary use' covered by the warranty of merchantability.[4]  Weiss v. PPG Indus., Inc., 148 F.R.D. 289, 293 (M.D. Fla.1993) (citing McLeod

---

[4]However, the two warranties are not mutually exclusive.  N.C. Gen. Stat. § 25-2-315 cmt. 2; Fla. Stat. § 672.315 cmt. 2; See also Premix, 145 F. Supp. 2d at 1357.  A good may be defective in regards to both the "ordinary purpose" for which it is generally used and the more specific "particular purpose" for which the buyer intends to use it.

v. W.S. Merrell Co., 174 So.2d 736, 738-39 (Fla.1965); Fred's Excavating & Crane Serv., Inc. v. Cont'l Ins. Co., 340 So.2d 1220 (Fla. 4th Dist. Ct. App. 1976)); See also Halprin v. Ford Motor Co., 107 N.C. App. 423, 431, 420 S.E.2d 686, 691 (1992) (rejecting claim for breach of implied warranty of fitness for a particular purpose where buyer used his truck for "general everyday" purposes).

In the present case, taken in the light most favorable to the plaintiff, the pleadings allege facts sufficient to support a claim of breach of the implied warranty of fitness for a particular purpose. GWP alleges that it purchased the log breakdown and lumber handling systems for the particular purpose of "produc[ing] on a consistent basis 40,000 board feet per hour for softwoods and 30,000 board feet per hour for hardwoods" and that ASM had specific knowledge of this particular purpose. (Am. Compl. ¶27.)  GWP further alleges facts which, if proven, indicate reliance upon ASM's judgment in selecting the equipment appropriate for this particular purpose.  (Am. Compl. ¶¶13-15, 18, 25, 27.)  The pleadings, when taken in the light most favorable to the plaintiff, also allege facts sufficient to indicate that ASM had reason to know of GWP's reliance on its judgment.  GWP alleges that representatives of ASM repeatedly stated that the equipment would produce at the levels expected by GWP and that ASM knew that this fact was critical to GWP's choice of ASM's equipment.  (Am. Compl. ¶¶4, 13-15, 17-18, 27.)  This reliance may also be inferred from the relationship between the parties and the disparity of knowledge between the manufacturer of equipment and its purchaser.  Thus, GWP's claim for breach of the implied warranty of fitness for a particular purpose is sufficiently pled.

3.  ASM's Affirmative Defense to GWP's Breach of Warranty Claims

Nevertheless, ASM argues that its "Terms and Conditions of Sale" were part of a written contract between the parties and that the disclaimer of warranties contained therein bar GWP's

warranty claims.[5]  For this disclaimer to be valid, it must have formed a portion of the contract between the two parties.  See Premix, 145 F. Supp. 2d at 1354-56 (S.D. Fla. 2001); Se. Adhesives, 89 N.C. App. at 441-44, 366 S.E.2d at 507-08 (1988); See also Pioneer/Eclipse, 113 F. Supp. 2d 811 (W.D.N.C. 2000) (refusing to enforce choice of law provision in shipping statements where writings of the parties did not agree); McDonald, 395 F. Supp. 2d 255 (M.D.N.C. 2005) (refusing, as a matter of law, to bar recovery of consequential and incidental damages stemming from sale of lumber products despite disclaimers in "Terms and Conditions" on billing invoices).

In Se. Adhesives, discussed supra at 6, the parties entered into an oral agreement for the purchase of urea resin. 89 N.C. App. at 441, 366 S.E.2d at 507. When the materials were shipped from the manufacturer to the purchaser, the manufacturer included a bill of lading which disclaimed the warranties of merchantability and fitness for a particular purpose.  Id. at 441-42, 366 S.E.2d at 507-08.  The court in that case held that these disclaimers were "a proposal for additional terms to the contract" and that as such they were governed by N.C. Gen. Stat. § 25-2-207(2).  89 N.C. App. at 442, 366 S.E.2d at 508.  The court further held that "a term which so drastically affects the remedies available to the buyer upon seller's breach must be considered a material alteration when not explicitly negotiated by the parties."  89 N.C. App. at 443, 366 S.E.2d at 508.  Thus, the court excluded these disclaimers from the contract as required by N.C. Gen. Stat. § 25-2-207(2)(b) and allowed the warranty claims to proceed.  Id.

---

[5]These "Terms and Conditions of Sale" provide a limited warranty that the equipment will be "free from defects in material and workmanship under normal use and service for a period of twelve (12) months after date of delivery of equipment."  All other warranties, either express or implied, are excluded by this document, "INCLUDING THE WARRANTIES OF MERCHANTABILITY AND FITNESS." (capitals in original)

In <u>Premix</u>, discussed <u>supra</u> at 5-6, the plaintiff alleged that a chemical additive purchased from the defendant had discolored its pool coatings and sued the defendant for breach of the implied warranties of merchantability and fitness for a particular purpose. 145 F. Supp. 2d at 1351-52, 1357. In that case, the court held that the disclaimer of warranties provision contained in the defendant's invoices was not part of the contract of sale between the parties because the invoices were shipped after the sale and did not agree with invoices sent to the defendant by the plaintiff. <u>Id.</u> at 1355. Thus, the warranty claims were not barred.

Like the manufacturers in <u>Se. Adhesives</u> and <u>Premix</u>, in this case ASM claims that the warranties asserted by GWP were barred by ASM's "Terms and Conditions of Sale." However, like the disclaimer of warranties in <u>Se. Adhesives</u>, the disclaimer in this case materially alters the contract between the parties if not mutually agreed upon and so may not be enforceable. Like the defendant's disclaimers in <u>Premix</u>, it is also possible that the disclaimers in ASM's "Terms and Conditions of Sale" conflict with either the forms created by GWP or the understanding of the parties and are thus excluded from any agreement between the parties. There is simply not enough evidence before the court at this time to support a finding that the "Terms and Conditions of Sale" are part of a contract between GWP and ASM.

4. <u>Conclusion</u>

GWP has alleged sufficient facts to support its claim for breach of the implied warranties of merchantability and fitness for a particular purpose. Although ASM asserts its "Terms and Conditions of Sale" as an affirmative defense, only upon further discovery and maturation of the record will this court be able to determine whether the disclaimers contained in those "Terms and Conditions of Sale" formed a valid portion of the contract between the parties. Thus, ASM's motion

to dismiss GWP's claim for breach of warranties is denied.

**E. Choice of Law for GWP's Negligence Claims**

As with GWP's contract and warranty claims, there is a choice of law issue which must be addressed before this court can consider GWP's claims for negligent misrepresentation and negligent design, manufacture, and/or installation. Although this court will apply the conflict of law rules of North Carolina as before, the conflict of law rules for tort claims differ from those applied to contract claims. <u>Klaxon</u>, 313 U.S. at 496, 61 S.Ct. at 1021 (1941). Because of this distinction, the court here reaches a result different from that of its choice of law analysis regarding the contract claims.

"Under traditional choice of law rules, the law of the place of the tort determines a plaintiff's right to recover in an action for fraud or deceit." <u>Speedway Promoters, Inc. v. Hooter's of Am., Inc.</u>, 123 F. Supp. 2d 956, 962 (W.D.N.C. 2000) (<u>quoting</u> <u>Simms Inv. Co. v. E.F. Hutton & Co., Inc.</u>, 688 F. Supp. 193, 197 (M.D.N.C.1988)). Under North Carolina law, a "tort occurs at the place where the last event takes place that is necessary to render the actor liable. Since injury is the last element of a tort, the traditional North Carolina rule applies the law of the place of injury." <u>Speedway</u>, F. Supp. 2d at 962 (<u>quoting</u> <u>Simms</u>, 688 F. Supp. at 197) (internal citations omitted). Although some North Carolina courts have instead applied a "most significant relationship" test, where the place of injury is clear "the better rule is the 'where the injuries are sustained' standard . . ." <u>Speedway</u>, 123 F. Supp. 2d at 962 (<u>quoting</u> <u>United Va. Bank v. Air-Lift Assoc., Inc.</u>, 79 N.C.App. 315, 322, 339 S.E.2d 90, 94 (1986) (citation omitted)); <u>See</u> <u>also</u> <u>New England Leather Co. v. Feuer Leather Corp.</u>, 942 F.2d 253, 255-56 (4th Cir. 1991). Because this court finds that the injury in this case occurred at GWP's lumber mill in North Carolina when the equipment purchased from ASM failed to perform to GWP's expectations, North Carolina law will apply to this claim for relief.

## F. GWP's Negligent Misrepresentation Claim

In North Carolina, negligent misrepresentation "occurs when (1) a party justifiably relies (2) to his detriment (3) on information prepared without reasonable care (4) by one who owed the relying party a duty of care." <u>Jordan v. Earthgrains Cos., Inc.</u>, 155 N.C. App. 762, 766, 576 S.E.2d 336, 339 (2003) (<u>quoting</u> <u>Raritan River Steel Co. v. Cherry, Bekaert & Holland</u>, 322 N.C. 200, 206, 367 S.E.2d 609, 612 (1988)). More specifically, North Carolina has adopted the Restatement of Torts definition and recognizes the tort of negligent misrepresentation when

> [o]ne who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

<u>Brinkman v. Barrett Kays & Assocs., P.A.</u>, 155 N.C.App. 738, 741, 575 S.E.2d 40, 43 (2003) (<u>quoting</u> RESTATEMENT (SECOND) OF TORTS § 552 (1977)).

In this case, ASM contends that the economic loss rule precludes GWP's recovery on the theory of negligent misrepresentation. Under North Carolina law, the economic loss rule prevents the purchaser of a defective product from bringing a negligence action to recover purely economic losses sustained as a result of the product's failure to perform as expected. <u>Wilson v. Dryvit Sys., Inc.</u>, 206 F.Supp.2d 749, 753 (E.D.N.C. 2002) (<u>citing</u> <u>Moore v. Coachmen Indus., Inc.</u>, 129 N.C. App. 389, 499 S.E.2d 772, 780 (1998); <u>Chicopee, Inc. v. Sims Metal Works, Inc.</u>, 98 N.C. App. 423, 391 S.E.2d 211, 217 (1990)). Only "where a defective product causes damage to property other than the product itself" are the losses recoverable in tort. <u>Moore</u>, 129 N.C. App. at 402, 429 S.E.2d at 780 (<u>citing</u> <u>Reece</u>, 110 N.C. App. 462, 466-67, 429 S.E.2d 768, 770 (1993)).

The purpose of the rule is to encourage contracting parties "to allocate risks for economic loss themselves." <u>Lord v. Customized Consulting Specialty, Inc.</u>, 643 S.E.2d 28, 30 (N.C. App.

2007).  Since the sale of goods is governed by contract, "the parties are free to include, or exclude,

provisions as to the parties' respective rights and remedies, should the product prove to be

defective."  Moore, 129 N.C. App. at 401-02, 499 S.E.2d at 780 (citing Reece, 110 N.C. App. at 466-

77, 429 S.E.2d at 770).  The economic loss rule has been applied with particular force in the area of

products liability.  See Moore, 129 N.C. App. 389, 499 S.E.2d 772.  Outside of this body of law and

in the absence of contractual privity, the application of the economic loss rule is less uniform.  See

e.g., Lord, 643 S.E.2d at 30 (N.C. App. 2007) (refusing to apply economic loss rule to bar recovery

for negligence of subcontractors in suit by homeowners when there was no contractual privity);

Howell v. Fisher, 49 N.C. App. 488, 272 S.E.2d 19 (1980) (refusing to apply economic loss rule to

bar recovery for negligent misrepresentation in regards to soil testing report where there was no

contractual privity).

　　　　For a tort claim to arise in the context of a contractual relationship, "a plaintiff must allege

a duty owed him by the defendant separate and distinct from any duty owed under a contract."  US

LEC Commc'ns, Inc. v. Qwest Commc'ns Corp., slip op., 2006 WL 1367383, at *2 (W.D.N.C.

2006) (citing VanWyck Textile Sys., B.V. v. Zimmer Mach. Am., Inc., 994 F. Supp. 350, 362

(W.D.N.C. 1997); See also Strum v. Exxon Co., USA, 15 F.3d 327, 330-31 (4th Cir. 1994).  This

independent duty requirement has been "carefully circumscribed" by North Carolina state law.

Strum, 15 F.3d at 331.  This ensures that the economic loss rule can fulfill its purpose of keeping tort

and contract law within their separate spheres.  East River S.S. Corp. v. Transam. Delaval, Inc., 476

U.S. 858, 871 (1996); First Care Med. Clinic, Inc. v. Polymedco, Inc., slip op., 2006 WL 3497845,

at *4 (W.D.N.C. 2006).

Although a fraud in the inducement claim may meet these criteria because it does not dispute the performance of the terms of the contract but instead challenges the validity of the contract itself, North Carolina courts have been wary of enlarging this exception for fear of destroying the wall between contract and tort entirely and "eviscerating the contract/warranty system." <u>Coker v. DaimlerChrysler Corp.</u>, No. 01 CVS 1264, 2004 NCBC 1, 2004 WL 32676, at *3 (N.C. Super. Ct. Rowan County., Business Ct. Jan. 5, 2004); <u>aff'd on other grounds</u>, 172 N.C. App. 386, 617 S.E.2d 306 (2005); <u>aff'd</u>, 6360 N.C. 389, 627 S.E.2d 461 (2006) (per curiam). In <u>Coker</u>, the plaintiffs were car owners who alleged that DaimlerChrysler had defrauded them by failing to include certain safety components in the vans the plaintiffs had purchased, despite DaimlerChrysler's representation that their vans were safe. <u>Id.</u> The court in that case held that these claims were barred by the economic loss doctrine and granted DaimlerChrysler's 12(b)(6) motion to dismiss plaintiffs' claims for common law fraud. <u>Id.</u> Similarly, in <u>First Care</u>, the plaintiff alleged intentional misrepresentation when a machine it purchased from the defendant did not perform as the plaintiff expected. Slip op., 2006 WL 3497845, at *4 (W.D.N.C. 2006). In that case, this court applied North Carolina law and held that the economic loss doctrine barred plaintiff's recovery in tort for the purchase of goods governed by a contract and rendered summary judgment in favor of the defendant. <u>Id.</u>

In the present case, GWP alleges that ASM misrepresented the performance of the equipment which it sold to GWP. GWP claims economic damages stemming from the equipment's failure to perform to the company's expectations but does not allege that this failure to perform caused personal injury or damage to a separate piece of property. Like the plaintiff in <u>First Care</u>, in this case GWP seeks damages on a tort theory for an injury that it alleges elsewhere is a breach of contract. Under North Carolina law, when a contract for the sale of goods exists, the parties should seek

redress from the law of contracts and not from tort law.  Because the damages claimed by GWP are purely economic losses, because any problems with the equipment did not cause damage to any separate property or to any person, and because this is at heart a contractual dispute, the economic loss doctrine controls.  Thus, GWP's claim for negligent misrepresentation is dismissed pursuant to Rule 12(b)(6).

## G.  GWP's Negligent Design, Manufacture and/or Installation Claim

GWP's claim of negligent design, manufacture, and/or installation is also barred by the economic loss doctrine.  "[A] tort action does not lie against a party to a contract who simply fails to properly perform the terms of the contract, even if that failure to perform was due to the negligent or intentional conduct of that party ..."  Spillman v. Am. Homes of Mocksville, Inc., 108 N.C. App. 63, 65, 422 S.E.2d 740, 741-42 (1992).  Although the specific terms and form of the contract are disputed, both GWP and ASM allege the existence of a contract between the parties for the purchase and installation of log breakdown and lumber handling systems.  Like GWP's allegation of negligent misrepresentation, GWP's claim of negligent design, manufacture, and/or installation is inseparable from the claim for breach of contract.  The claim for negligent design arises from the same facts and alleges the same injuries as the claim for breach of contract.  Furthermore, GWP fails to allege damage to other property or personal injury that would preclude the operation of the economic loss rule.  Because the manufacture, installation, and design of these systems was the very subject of the contract and because there was no injury to other property or persons, GWP's claim for negligent design, manufacture, and installation is barred by the economic loss doctrine and will be dismissed.

### III.  CONCLUSION

The economic loss doctrine bars GWP's negligent misrepresentation and negligent design, manufacture, and/or installation claims.  Thus, GWP's motion to dismiss is granted with respect to these claims.  However, taking all facts in the light most favorable to the plaintiff, this Court finds that GWP alleged sufficient facts to maintain its claims for breach of contract and breach of warranties.

**IT IS THEREFORE ORDERED**, that ASM's "Motion to Dismiss" GWP's claims of negligent misrepresentation and negligent design, manufacture, and/or installation is **GRANTED.**

**IT IS FURTHER ORDERED**, that ASM's "Motion to Dismiss" GWP's claims for breach of contract and breach of warranties is **DENIED.**

Signed: June 25, 2007

Richard L. Voorhees
United States District Judge